**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**MISSISSIPPI POWER COMPANY**
**MEDICAL BENEFITS PLAN**                                                                **PLAINTIFF**

**VERSUS**                                                        **CIVIL ACTION NO.  1:03cv224JMR**

**OTIS HUBERT WELCH**                                                                          **DEFENDANT**

## MEMORANDUM OPINION

This cause comes before the Court on the motion of the Defendant, Otis Hubert Welch ("Welch") for summary judgment [14-1] and on the motion of the Plaintiff Mississippi Power Company Medical Benefits Plan ("MPCMBP") for summary judgment [16-1], both pursuant to Rule 56 of the Federal Rules of Civil Procedure, and both concerning the Plaintiff's attempt to recover medical benefits it paid for treatment of physical injuries that Welch sustained as a result of the medical malpractice of a third party.  After due consideration of the evidence of record, the briefs of counsel, the applicable law and being otherwise fully advised in the premises, the Court finds as follows:

### Standard of Review

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  The moving party initially carries the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Materiality connotes disputes over facts that might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  Further, "summary judgment will not lie

if the dispute about a material fact is `genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party bears the initial burden of establishing the absence of evidence to support the nonmovant's cause of action. *Celotex,* 477 U.S. at 325; *Hirras v. National R.R. Passenger Corp.,* 95 F.3d 396, 399 (5th Cir. 1996). Should this burden be met by the moving party, the nonmoving party then must establish sufficient facts beyond the pleadings to show that summary judgment is inappropriate. *Exxon Corp. v. Burglin,* 4 F.3d 1294, 1297 (5th Cir. 1993). The Court examines applicable substantive law to determine which facts and issues are material. *King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992). The nonmoving party must oppose the summary judgment motion either by referring to evidentiary material already in the record or by submitting additional evidentiary documents which set out specific facts indicating the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e). If the opponent fails in his duty, after the Court has viewed the evidence in the light most favorable to the non-movant, summary judgment is implicated. *Id.*; *Exxon*, 4 F.3d at 1297. Assertions unsupported by facts are insufficient to oppose a summary judgment motion, *Williams v. Weber Management Services,* 839 F.2d 1039 (5th Cir. 1987).

Statement of Facts

The MPCMBP is a self-funded health plan governed by ERISA, 29 U.S.C. §§ 1001 *et seq*. (Defendant's Memorandum in Support of Motion for Summary Judgment, p. 1; Plaintiff's Motion for Summary Judgment, p. 1) Welch, as an employee of Mississippi Power Company ("MPC"), was insured under the MPCMBP for medical care payments during the year 1997. (Complaint, para. III and VI; Answer and Affirmative Defenses, para. III and IV) The MPCMBP contained a subrogation and reimbursement provision. (Complaint, para. VII; Answer and Affirmative Defenses, para. VII).

In May of 1997, Welch underwent a surgical procedure to remove a mass from his left lung. (Complaint, para. VIII; Answer and Affirmative Defenses, para. VIII) As a result of the surgical procedure, Welch suffered infectious complications which led to extended hospitalizations and further medical treatment. (Defendant's Memo. in Support of Mtn. for Summ. Judg., p. 1; Plaintiff's Mtn. for Summ. Judg., para. IV) In May of 1999, Welch filed a medical malpractice lawsuit against the physician who performed the surgery and others, which suit was ultimately resolved by way of a confidential "Release and Settlement Agreement" executed by Welch in March of 2002. (Defendant's Memo. in Support of Mtn. For Summ. Judg., pp. 1-2; Plaintiff's Mtn. For Summ. Judg., para. V and VI; Affidavit of William B. Raiford, III, para. 2)

In March 2000, initiated with a letter from Welch to the Southern Company Services, Inc. ("Southern Company") subrogation unit, Welch and the MPCMBP began to communicate with each other in an attempt to ascertain any claims for subrogation by the MPCMBP. (Defendant's Memo. In Support of Mtn. for Summ. Judg., Ex. "1" through "6"; Plaintiff's Mtn. for Summ. Judg., Ex. "D" through "BB"; Raiford Affidavit, para. 3-7, 9-11) In February 2001, Welch received one itemization of claims from Fox-Everett, Inc., MPC's third party claims administrator from October 1, 1976 through December 31, 1998. (Plaintiff's Mtn. for Summ. Judg., Ex. "I") According to Welch's calculations, the portion of Fox-Everett's itemization of claims that could be attributed to Welch's medical malpractice lawsuit was $6,533.40. (Defendant's Memo. in Support of Mtn. for Summ. Judg., Ex. 2; Raiford Affidavit, para. 5) Between February 2001 and February 2002, the record reflects that Welch and the MPCMBP did not communicate.

On February 4, 2002, Welch's attorney William Raiford ("Raiford") reinitiated

communications with the MPCMBP, sending a letter in which he argued that he had previously communicated with the MPCMBP and many health insurers in an effort to determine whether any subrogation rights existed, that Fox-Everett's $6,533.40 itemization was the only claim made so far, and that he was requesting an itemization of any other claims for which the MPCMBP felt it had a right of subrogation.[1]  (Defendant's Memo. in Support of Mtn. for Summ. Judg., Ex. 2; Plaintiff's Mtn. for Summ. Judg., Ex. "L")  On February 6, 2002, the MPCMBP responded to Mr. Raiford's inquiry about other subrogation claims, explaining that United Healthcare was the medical option in which Welch was enrolled for the year 1997 and that United Healthcare's contact address was produced in a February 4, 2002 fax, along with a 1996 Medical Benefits Plan.  (Plaintiff's Mtn. for Summ. Judg., Ex. "N")  Mr. Raiford responded on February 6, claiming that the 1996 Medical Benefits Plan does not appear to pertain to any of Welch's medical expenses and that he was still waiting on claims information from United Healthcare, which he was told would be produced to him by Ginger McCrae, managing attorney for the Southern Company.  (Defendant's Memo. in Support of Mtn. for Summ. Judg., Ex. 3; Plaintiff's Mtn. for Summ. Judg., Ex. "M")  On February 7, 2002, the MPCMBP provided Mr. Raiford with a copy of the 1997 Medical Benefits Plan and an update for 1998.  (Plaintiff's Mtn. For Summ. Judg., Ex. "P")  On February 28, 2002, Mr. Raiford wrote the MPCMBP, arguing that he had received no response concerning Welch since his February 6 letter and requesting an itemization of any other MPCMBP subrogation claims, in writing, no later than 5:00 p.m., March 1, 2002; otherwise, Mr. Raiford argued that he would treat the $6,533.40 Fox-

---

[1] Also within this letter, Mr. Raiford disputed an itemization of claims, produced by the MPCMBP, from Blue Cross/Blue Shield of Mississippi.  Mr. Raiford argued that these claims could not be related to Welch's medical malpractice suit (and therefore the MPCMBP did not have a right to subrogation); because, the charges reflected on this itemization were incurred on or after January 1, 1999.

Everett itemization as the sole amount for which the MPCMBP would claim a right of subrogation. (Defendant's Memo. in Support of Mtn. for Summ. Judg., Ex. 4; Plaintiff's Mtn. for Summ. Judg., Ex. "Q") On March 1, 2002, the MPCMBP wrote to Mr. Raiford, explaining that Ginger McCrae was no long with the Southern Company and that contacting United Healthcare had been "challenging;" however, the MPCMBP expected to hear from United Healthcare by March 5, 2002, and would keep Mr. Raiford posted of the progress. (Plaintiff's Mtn. for Summ. Judg., Ex. "R") On March 8, 2002, Welch concluded his medical malpractice claim by way of a confidential "Release and Settlement Agreement," and Welch thereafter sent a check to the MPCMBP in the amount of $6,533.40. (Raiford Affidavit, para. 2; Defendant's Memo. in Support of Mtn. for Summ. Judg., p. 3) On May 8, 2002, the MPCMBP sent Mr. Raiford an itemization of the United Healthcare charges, amounting to $98,000, and advised Mr. Raiford that the $6,533.40 check was received but not cashed by the MPCMBP. (Defendant's Memo. in Supp. of Mtn. for Summ. Judg., Ex. 5; Plaintiff's Mtn. for Summ. Judg., Ex. "S") Mr. Raiford responded on May 13, 2002, arguing that since Welch's settlement had been concluded and the funds disbursed, Mr. Raiford was in no position to honor the MPCMBP's subrogation notice, and it was his opinion that the MPCMBP had waived any claim of subrogation by failing to act in a timely manner. (Defendant's Memo. in Support of Mtn. for Summ. Judg., Ex. 6; Plaintiff's Mtn. for Summ. Judg., Ex. "T") Mr. Raiford further argued that the United Healthcare itemization, produced by the MPCMBP, contained charges that were unrelated to Welch's medical malpractice suit; therefore, MPCMBP did not have a right of subrogation to portions of that itemization.[2] (Id.)

---

[2] The MPCMBP has since reevaluated the United Healthcare itemization of charges, and has lowered its claim from $98,000 to $54,553.28, to reflect only those costs that relate to Welch's post-operative complications that were the subject of his medical malpractice suit.

5

Discussion

*I. Welch's Motion for Summary Judgment*

The sole basis for Welch's motion for summary judgment is that the MPCMBP waived its right to recover the medical expenses it paid.[3] "Waiver is the intentional relinquishment of a known right." *Pitts v. American Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1997). To establish waiver, there must be shown an act or omission that evidences an intention to "permanently surrender the right alleged to have been waived." *Ewing v. Adams*, 573 So.2d 1364, 1368 (Miss. 1990). In light of the undisputed facts of this case, the Court is unwilling to find that the MPCMBP intended to permenantly surrender its right to subrogation. Welch submits that the MPCMBP waived its right to subrogation; because, the MPCMBP knew of the claim and, through its omissions, evidenced to Welch that it was surrendering its right to subrogation by failing to present an itemization of charges prior to settlement. However, the record clearly reflects an attempt by the MPCMBP to provide Welch with the United Healthcare itemization. The MPCMBP faxed the United Healthcare contact address to Mr. Raiford on February 4, 2002, so he could inquire directly with United Healthcare as

---

(Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment, p. 3, n. 4) Welch has not objected to the adjusted amount that the MPCMBP now claims, except to the extent that it does not reflect a credit for Welch's pro rata share of costs and attorneys' fees that he incurred in prosecuting the claims in the underlying lawsuit.

[3]The subrogation policy at issue in Welch's summary judgment motion reads as follows: "If the negligence or wrongful act of a third party causes death or injury and benefits are paid or payable under the Plan, the Company will be subrogated to the rights of those entitled by law to sue the third party, to the extent of the benefits payable under the Plan. Prior to payment or reimbursement of covered expenses by the Plan, you will be required to sign an agreement to repay the Company the benefits paid under the Plan, but not to exceed the amount of any recovery, less a pro rata share of court costs and reasonable attorney's fees as described in the following paragraphs. ... When payment is received from the third party, the amount recovered will immediately be paid to the Company." (Plaintiff's Mtn. for Summ. Judg., Ex. "B", p. 25-26)

to possible charges. Additionally, the MPCMBP wrote to Mr. Raiford on March 1, 2002 – Welch's deadline for an itemization – and informed him that it was attempting to compile an itemization and that contacting United Healthcare was "challenging." These communications by the MPCMBP can hardly be interpreted as an intention to permenantly surrender a known right. Furthermore, mere knowledge of Welch's demand to resolve the issue of subrogation did not establish any kind of waiver on the part of the MPCMBP. *See Williams on Behalf of Williams v. Jackson Stone Co.*, 867 F.Supp. 454, 458, n. 5 (S.D. Miss. 1994) ("There is no proof that Home Life was aware of the extent of Mr. Williams' illness, and even if there were such proof, it does not follow that merely by acquiring such knowledge, Home Life somehow waived the express provisions of its insurance policy. Waiver is by definition 'the intentional or voluntary relinquishment of a known right,' *Black's Law Dictionary,* 6th Ed. p. 1580 (1990), and there is absolutely no indication that Home Life surrendered any of its rights under the policy."). Accordingly, the Court finds the waiver argument without merit; therefore, Welch's summary judgment motion should be denied.

*II. MPCMBP's Motion for Summary Judgment*

As the MPCMBP points out in its summary judgment motion, Welch has not denied the MPCMBP's right to subrogation under the Plan until his response to this motion; rather, Welch has argued that the MPCMBP waived that right. Over the course of two (2) years, Welch and the MPCMBP communicated with each other in an attempt to ascertain the subrogation claims of the MPCMBP. This is evidenced by the numerous documents produced by both of the parties. Welch now argues that there is no evidence that he even signed an agreement to repay the plan, despite admitting to the existence of the subrogation agreement in his Answer and Affirmative Defenses. This argument must fail; for, while it is true that no document has been produced with Welch's

signature on it, the MPCMBP has produced a number of itemizations of benefits actually paid to Welch. Not once, until his response to this motion, has Welch disputed the legitimacy of those charges. He admits owing $6,533.40, and has only disputed the other subrogation claims to the extent that he feels they were waived by the MPCMBP. Even if Welch did dispute the legitimacy of some of the subrogation claims, by the language of the plan, the MPCMBP would have required Welch to sign an agreement "prior to payment or reimbursement of covered expenses by the Plan." (Plaintiff's Mtn. for Summ. Judg., Ex. "B", p. 25) The MPCMBP did pay and reimburse Welch; therefore, it is very safe to assume that since the MPCMBP paid thousands of dollars to cover Welch's expenses, they did so only after Welch agreed to the subrogation provision. Additionally, when Welch filed his medical malpractice lawsuit, one of the first acts of his attorney was to contact the Southern Company's subrogation unit, asking for an itemization of benefits paid to Welch. While Mr. Raiford's affidavit reads as if these communications were unilateral attempts by Welch to contact the MPCMBP, the record clearly indicates the ongoing and reciprocal nature of the communications between Welch and the MPCMBP. Welch has not established that a genuine issue of material fact exists as to whether he agreed to the subrogation provision, especially where the weight of the record convinces the Court otherwise. Therefore, this Court is of the opinion that no genuine issue of material fact exists as to Welch's liability for MPCMBP's subrogation claims.

Welch does convincingly argue that if the MPCMBP is entitled to recovery, genuine issues of material fact exist as to whether the $54,533.28 claimed by the MPCMBP should be or has been reduced by an amount that reflects Welch's pro rata share of costs and attorneys' fees that he

incurred in prosecuting the claims in the underlying lawsuit.[4] Since Welch disputes the amount claimed by the MPCMBP and the record reveals no evidence that the MPCMBP has already reduced its claim by an amount reflective of Welch's court costs and attorney's fees, this Court is of the opinion that genuine issues of material fact exist as to the damages claimed by the MPCMBP.

Conclusion

Considering that Welch's waiver argument is without merit and that Welch's argument concerning the evidence of a signed agreement is, likewise, without merit, the Court finds there is no genuine issue of material fact on the issue of Welch's liability for the medical benefits paid on his behalf by the MPCMBP. However, the Court finds there are genuine issues of material fact as to the exact amount owed by Welch to the MPCMBP; since, the record does not indicate that the $54,533.28 claimed by the MPCMBP has been reduced by an amount that reflects Welch's pro rata share of court costs and attorney's fees.

Based on the foregoing, it is the opinion of this Court that the Defendant's motion for summary judgment [14-1] should be denied. Furthermore, it is the opinion of this Court that the Plaintiff's motion for summary judgement [16-1], as it pertains to the issue of Welch's liability, should be granted; however, as far as the Plaintiff's motion pertains to the issue of damages, it should be denied. The only issue remaining is that of damages, which will be determined at trial

---

[4]The Plan provides for courts costs as follows: "If you make a claim for benefits against the third party, a notice of that claim must be provided the Claims Administrator. Notice of payment of benefit by the Plan must be filed with any claims against the third party. This notice must be recorded and constitutes a lien against any judgment, settlement, or recovery to the extent of your pro rata share of the benefits payable under the Plan, less the covered employee's pro rata share of all court costs incurred by the plaintiff in the prosecution of the claim, including reasonable attorney's fees. Court costs and attorney's fees shall be prorated by the judge of the trial court or by agreement between the parties." (Plaintiff's Mtn. for Summ. Judg., Ex. "B", p. 26)

unless the parties can reach an agreement before that time.

This the 3rd day of March, 2006.

s/John M. Roper

CHIEF UNITED STATES MAGISTRATE JUDGE