IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MISSISSIPPI POWER COMPANY
MEDICAL BENEFITS PLAN                                              PLAINTIFF

VERSUS                                                             CIVIL ACTION NO. 1:03cv224Ro

OTIS HUBERT WELCH                                                  DEFENDANT

### MEMORANDUM OPINION

This cause comes before the Court on the motion of the Plaintiff Mississippi Power Company Medical Benefits Plan ("MPCMBP") for summary judgment [43-1], pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court has previously granted partial summary judgment for MPCMBP 's subrogation claims for medical costs and paid on behalf of Defendant in 1997. The only issue left undecided by this Court is whether the amount of damages claimed by MPCMBP should be or has been reduced by the amount that reflects its *pro rata* share of costs and attorneys fees incurred in prosecuting the underlying lawsuit.

### Standard of Review

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The moving party initially carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Materiality connotes disputes over facts that might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Further, "summary judgment will not lie if the dispute about a material fact is `genuine,' that is, if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party bears the initial burden of establishing the absence of evidence to support the nonmovant's cause of action. *Celotex,* 477 U.S. at 325; *Hirras v. National R.R. Passenger Corp.,* 95 F.3d 396, 399 (5th Cir. 1996). Should this burden be met by the moving party, the nonmoving party then must establish sufficient facts beyond the pleadings to show that summary judgment is inappropriate. *Exxon Corp. v. Burglin,* 4 F.3d 1294, 1297 (5th Cir. 1993). The Court examines applicable substantive law to determine which facts and issues are material. *King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992). The nonmoving party must oppose the summary judgment motion either by referring to evidentiary material already in the record or by submitting additional evidentiary documents which set out specific facts indicating the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e). If the opponent fails in his duty, after the Court has viewed the evidence in the light most favorable to the non-movant, summary judgment is implicated. *Id.*; *Exxon,* 4 F.3d at 1297. Assertions unsupported by facts are insufficient to oppose a summary judgment motion, *Williams v. Weber Management Services,* 839 F.2d 1039 (5th Cir. 1987).

### Statement of Facts

The MPCMBP is a self-funded health plan governed by ERISA, 29 U.S.C. §§ 1001 *et seq.* (Defendant's Memorandum in Support of Initial Motion for Summary Judgment, p. 1; Plaintiff's Motion for Summary Judgment, p. 1) Welch, as an employee of Mississippi Power Company ("MPC"), was insured under the MPCMBP for medical care payments during the year 1997. (Complaint, para. III and VI; Answer and Affirmative Defenses, para. III and IV) The MPCMBP contained a subrogation and reimbursement provision. (Complaint, para. VII; Answer and Affirmative Defenses, para. VII).

In May of 1997, Welch underwent a surgical procedure to remove a mass from his left lung. (Complaint, para. VIII; Answer and Affirmative Defenses, para. VIII) As a result of the surgical procedure, Welch suffered infectious complications which led to extended hospitalizations and further medical treatment. (Defendant's Memo. in Support of Initial Mtn. for Summ. Judg., p. 1; Plaintiff's Mtn. for Summ. Judg., para. IV) In May of 1999, Welch filed a medical malpractice lawsuit against the physician who performed the surgery and others, which suit was ultimately resolved by way of a confidential "Release and Settlement Agreement" executed by Welch in March of 2002. (Defendant's Memo. in Support of Initial Mtn. For Summ. Judg., pp. 1-2; Plaintiff's Mtn. For Summ. Judg., para. V and VI; Affidavit of William B. Raiford, III, para. 2)

In March 2000, initiated with a letter from Welch to the Southern Company Services, Inc. ("Southern Company") subrogation unit, Welch and the MPCMBP began to communicate with each other in an attempt to ascertain any claims for subrogation by the MPCMBP. (Defendant's Memo. In Support of Initial Mtn. for Summ. Judg., Ex. "1" through "6"; Plaintiff's Mtn. for Summ. Judg., Ex. "D" through "BB"; Raiford Affidavit, para. 3-7, 9-11) In February 2001, Welch received one itemization of claims from Fox-Everett, Inc., MPC's third party claims administrator from October 1, 1976 through December 31, 1998. (Plaintiff's Mtn. for Summ. Judg., Ex. "I") According to Welch's calculations, the portion of Fox-Everett's itemization of claims that could be attributed to Welch's medical malpractice lawsuit was $6,533.40. (Defendant's Memo. in Support of Mtn. for Summ. Judg., Ex. 2; Raiford Affidavit, para. 5) Between February 2001 and February 2002, the record reflects that Welch and the MPCMBP did not communicate.

On February 4, 2002, Welch's attorney William Raiford ("Raiford") reinitiated communications with the MPCMBP, sending a letter in which he argued that he had previously communicated with the MPCMBP and many health insurers in an effort to determine whether any

subrogation rights existed, that Fox-Everett's $6,533.40 itemization was the only claim made so far, and that he was requesting an itemization of any other claims for which the MPCMBP felt it had a right of subrogation.[1] (Defendant's Memo. in Support of Initial Mtn. for Summ. Judg., Ex. 2; Plaintiff's Mtn. for Summ. Judg., Ex. "L") On February 6, 2002, the MPCMBP responded to Mr. Raiford's inquiry about other subrogation claims, explaining that United Healthcare was the medical option in which Welch was enrolled for the year 1997 and that United Healthcare's contact address was produced in a February 4, 2002 fax, along with a 1996 Medical Benefits Plan. (Plaintiff's Mtn. for Summ. Judg., Ex. "N") Mr. Raiford responded on February 6, claiming that the 1996 Medical Benefits Plan does not appear to pertain to any of Welch's medical expenses and that he was still waiting on claims information from United Healthcare, which he was told would be produced to him by Ginger McCrae, managing attorney for the Southern Company. (Defendant's Memo. in Support of Initial Mtn. for Summ. Judg., Ex. 3; Plaintiff's Mtn. for Summ. Judg., Ex. "M") On February 7, 2002, the MPCMBP provided Mr. Raiford with a copy of the 1997 Medical Benefits Plan and an update for 1998. (Plaintiff's Mtn. For Summ. Judg., Ex. "P") On February 28, 2002, Mr. Raiford wrote the MPCMBP, arguing that he had received no response concerning Welch since his February 6 letter and requesting an itemization of any other MPCMBP subrogation claims, in writing, no later than 5:00 p.m., March 1, 2002; otherwise, Mr. Raiford argued that he would treat the $6,533.40 Fox-Everett itemization as the sole amount for which the MPCMBP would claim a right of subrogation. (Defendant's Memo. in Support of Mtn. for Summ. Judg., Ex. 4; Plaintiff's Mtn. for Summ. Judg., Ex. "Q") On March 1, 2002, the MPCMBP wrote to Mr. Raiford, explaining

---

[1] Also within this letter, Mr. Raiford disputed an itemization of claims, produced by the MPCMBP, from Blue Cross/Blue Shield of Mississippi. Mr. Raiford argued that these claims could not be related to Welch's medical malpractice suit (and therefore the MPCMBP did not have a right to subrogation); because, the charges reflected on this itemization were incurred on or after January 1, 1999.

that Ginger McCrae was no longer with the Southern Company and that contacting United Healthcare had been "challenging;" however, the MPCMBP expected to hear from United Healthcare by March 5, 2002, and would keep Mr. Raiford posted of the progress. (Plaintiff's Mtn. for Summ. Judg., Ex. "R") On March 8, 2002, Welch concluded his medical malpractice claim by way of a confidential "Release and Settlement Agreement," and Welch thereafter sent a check to the MPCMBP in the amount of $6,533.40. (Raiford Affidavit, para. 2; Defendant's Memo. in Support of Mtn. for Summ. Judg., p. 3) On May 8, 2002, the MPCMBP sent Mr. Raiford an itemization of the United Healthcare charges, amounting to $98,000, and advised Mr. Raiford that the $6,533.40 check was received but not cashed by the MPCMBP. (Defendant's Memo. in Supp. of Initial Mtn. for Summ. Judg., Ex. 5; Plaintiff's Mtn. for Summ. Judg., Ex. "S") Mr. Raiford responded on May 13, 2002, arguing that since Welch's settlement had been concluded and the funds disbursed, Mr. Raiford was in no position to honor the MPCMBP's subrogation notice, and it was his opinion that the MPCMBP had waived any claim of subrogation by failing to act in a timely manner. (Defendant's Memo. in Support of Initial Mtn. for Summ. Judg., Ex. 6; Plaintiff's Mtn. for Summ. Judg., Ex. "T") Mr. Raiford further argued that the United Healthcare itemization, produced by the MPCMBP, contained charges that were unrelated to Welch's medical malpractice suit; therefore, MPCMBP did not have a right of subrogation to portions of that itemization.[2] (Id.)

The Court found that Welch's waiver argument was without merit as was Welch's argument regarding evidence of signed agreement. Thus, the Court found there was no issue of material fact

---

[2] The MPCMBP has since reevaluated the United Healthcare itemization of charges, and has lowered its claim from $98,000 to $54,553.28, to reflect only those costs that relate to Welch's post-operative complications that were the subject of his medical malpractice suit. (Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment, p. 3, n. 4) Welch has not objected to the adjusted amount that the MPCMBP now claims, except to the extent that it does not reflect a credit for Welch's pro rata share of costs and attorneys' fees that he incurred in prosecuting the claims in the underlying lawsuit.

on the issue of Welch's liability for medical benefits paid on his behalf by MPCMBP. However, the Court found that there were issues of material fact as to exact amount owed by Welch to MPCMBP as the record did not reflect whether the $54,533.28 claimed was reduced by the amount which demonstrates Welch's pro rata share of court costs and attorney fees.

## Discussion

On July 7, 2006, Plaintiff filed a Motion for Summary Judgment on damages (43-1) . This motion is unopposed. MPCMBP's postion is that its subrogation claims against Welch should not be reduced by its pro rata share of attorney's fees and costs in the underlying medical malpractice suit as there is no evidence of the amount Welch paid his attorneys or paid in court costs submitted to this Court.

MPCMBP requested this information on numerous occasions. On December 23, 2002 and January 23, 2002, MPCMBP asked Welch to provide a copy of the settlement agreement . There was no response to either of these requests. On February 13, 2004, Plaintiff propounded Requests for Production of Documents which requested this information for a third time and Defendant objected to its production claiming confidentiality and attorney-client privilege. The document was never produced. Although, Welch asserted his right to pro rata reduction in his previous response to the Motion for Summary Judgment, he did not disclose the amount/percentage of attorney's fees paid or provide any information regarding court costs.

On March 3, 2006, this Court found that MPCMBP might have an obligation to reimburse Welch for these fees and costs .However, to date, Welch has never provided any evidence for this Court to base its award for the aforementioned costs or fees. Any amount this Court would award at this time would be based on pure speculation  Plaintiff is clearly not desirous of pursuing any claim for its pro rata share of court costs and attorney's fees as no response to Plaintiff's motion

has been filed.

Accordingly, the Court finds that medical claims were paid on Welch's behalf pursuant to two separate medical plans. The first was effective from January 1,2996 through September 30,1997 and the other was effective from October 1,2997 . Under the first plan, the language included an express provision that the "Plan sponsor shall be entitled to recover reasonable attorney fees from the Covered Person incurred in collecting proceeds held by the Covered Person"1996 Plan Section 6.8. Eighty percent of Welch's claim were paid under the first plan for care provided from May 1997 through September 30,1997. To date, MPCMBP incurred a total of $12,767.59 in attorney's fees. The Court finds that MPCMBP's Motion for Summary Judgment on Damages should be granted and that judgment should be entered in MPCMBP's favor in the amount of $54,553.28 plus $10,214.00 or eighty percent of its attorney fees incurred in prosecuting this subrogation action against Welch.

This the ____13th____ day of November 2006.

_____
CHIEF UNITED STATES MAGISTRATE JUDGE